IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| Barbara MARTIN, | : | |
| Plaintiff, | : | |
| v. | : | Civil No. 18-11931 (RBK/AMD) |
| COUNTY OF ATLANTIC, *et al.*, | : | |
| Defendants. | : | **OPINION** |

**KUGLER**, United States District Judge:

Plaintiff Barbara Martin brings this twenty-count suit (Doc. No. 1 ("Compl.")) against twelve law enforcement Defendants, alleging, among other things, that they violated her rights under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") in connection with a search of her property. Each Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. Nos. 3, 8, 9, 15.) For the reasons below, Defendants' motions are **GRANTED IN PART**.

I. **BACKGROUND**[1]

This case stems from authorities' search for Plaintiff's Aunt Helen Hugo ("Aunt Helen"), an elderly, incapacitated woman reported missing from her assisted living facility in July 2016. After finding Aunt Helen at Plaintiff's Atlantic County farm property, police arrested Plaintiff,

---

[1] On this motion to dismiss, the Court accepts as true the well-pleaded facts in the Complaint and construes them in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Because the Complaint does not include first names for several Defendants, this Opinion, like the Complaint, refers to those individuals as "FNU," for "first name unknown," followed by their last name as pled.

1

who now sues those involved at various points in the search, including: (1) Hamilton Township Police Department members Officer Mark Perna, Lieutenant FNU Ciambrone, Sergeant FNU Graczyk, Sergeant Michael Schnurr, Officer FNU Blose, Officer Lawrence Murray, and Officer FNU Kinsey (collectively, "Hamilton Township Defendants"); (2) Hamilton Township Detective Lawrence Fernan[2]; (3) Atlantic County Emergency Response Team members Lieutenant FNU Snyder and Team Leader FNU Bertino (collectively, "Atlantic County Defendants"); (4) Atlantic County Chief Assistant Prosecutor Mario Formica; and (5) Atlantic County itself.

The search for Aunt Helen began on July 21, 2016, when she departed from her residence at the Spring Oak assisted living facility in Ocean County, New Jersey. (Compl. at ¶ 27.) That day, the Lacy Township police department entered her as a missing person. (*Id.* at ¶ 37.) On July 22, 2016, Aunt Helen—who left the facility on her own free will—faxed a letter to Spring Oak stating that she was of sound mind, on vacation, wished not to be harassed, and that she had her medicine. (*Id.* at ¶¶ 27–30.) In actuality, Aunt Helen was vacationing at Plaintiff's farm property at 7234 Belmont Avenue in Hamilton Township, New Jersey. (*Id.* at ¶ 33.)

Aunt Helen's letter circulated from Spring Oak to her limited guardian, New Jersey's Office of the Public Guardian for Elderly Adults. (*Id.* at ¶ 31; Doc. Nos. 1-1, 1-2.) On July 27, 2016, an attorney for the Office of the Public Guardian for Elderly Adults, Suzanne Dykes, applied for an "Order" before Judge Mark K. Sandson, Presiding Judge of the New Jersey Superior Court, Chancery Division. (*Id.* at ¶ 24.) That Order, attached to the Complaint,[3] states:

---

[2] A word on terminology. Although the brief in support of Defendant Fernan's motion to dismiss lumps him together with the other "Hamilton Township Defendants," (Doc. No. 8), the Complaint's definition of "Hamilton Township Defendants" excludes Fernan. (Compl. at ¶ 49.) Like the Complaint, the Court does not include Fernan with the "Hamilton Township Defendants" and refers to him individually.

[3] Thus, the Court may consider the Order in deciding these motions to dismiss. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a

1. The Hamilton Township Police will conduct a search of 7234 Belmont Avenue, Mays Landing for Helen Hugo.
2. If Helen Hugo is found at said property, she is to be returned immediately to Spring Oaks Assisted Living.
3. Once Helen Hugo is returned to Spring Oak Assisted Living, the Public Guardian may restrict the visits of Barbara and Kenneth Martin until further Order of the Court.

(Doc. No. 1-1.) Ms. Dykes prepared the Order that Judge Sandson ultimately signed on her office's letterhead, (Compl. at ¶¶ 25, 34), though it also contained a proper case caption and a stamp from the Superior Court Deputy Clerk indicating the document's filing date. (Doc. No. 1-1.) The document's title of "Order" appears just below the words "Civil Action" in the case caption, which also notes that Aunt Helen is an "incapacitated person." (*Id.*) In issuing the Order, Judge Sandson considered "papers" that Plaintiff does not attach to the Complaint, (*id.*), and heard on the record Ms. Dykes' telephonic presentation, the contents of which are not discussed. (*Id.*; Compl. at ¶ 32.)

Judge Sandson's signed Order reached the Hamilton Township Police station, where Defendant Detective Lawrence Fernan received it. (*Id.* at ¶¶ 35–36.) After determining that another police department entered Aunt Helen as missing, Defendant Fernan contacted Defendant Mario Formica, Chief Assistant Prosecutor with the Atlantic County Prosecutor's Office. (*Id.* at ¶¶ 37–38.) Defendant Formica confirmed to Fernan that Judge Sandson signed the Order, and after hearing the Order's contents, Formica told Fernan to "go ahead and search the property." (*Id.* at ¶¶ 39–41.) Fernan, in turn, worked with Defendant FNU Snyder to assemble a search group, which included the Hamilton Township and the Atlantic County Defendants. (*Id.* at ¶¶ 43–49.)

---

motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

Thus, the Hamilton Township and the Atlantic County Defendants departed to search Plaintiff's property at 7234 Belmont Avenue, which includes a residence and a barn "quite some distance" from it. (*Id.* at ¶¶ 16–18, 50.) Upon arrival, officers used a loudspeaker to command the occupants to exit the residence. (*Id.* at ¶ 52.) At this time, Plaintiff was not in the residence, but feeding animals near the barn, where she observed "one or more officers, including Defendant Mark A. Perna, come towards" her. (*Id.* at ¶¶ 53–56.) Perna then grabbed Plaintiff roughly, struck her, and threw her to the ground repeatedly and roughly. (*Id.* at ¶ 57.) An unspecified officer, potentially Perna, handcuffed Plaintiff and took her into custody. (*Id.* at ¶ 58.) Eventually, an unspecified Atlantic County Defendant found Aunt Helen in Plaintiff's residence and removed her from the property. (*Id.* at ¶¶ 59–60.)

Defendant Fernan charged Plaintiff with obstruction of the administration of the law for not complying with commands to exit the residence, even though she was by the barn and not in the residence. (*Id.* at ¶¶ 61, 129.) Fernan then prepared a criminal complaint for Municipal Judge Switzer, who issued a warrant for Plaintiff's arrest on July 27, 2016. (*Id.* at ¶¶ 61–63.) Plaintiff spent four days in jail before posting bail and claims she suffered physical injuries, emotional distress, mental anguish, and anxiety from the incident. (*Id.* at ¶¶ 65–68.) Invoking this Court's federal question jurisdiction, Plaintiff sued the Defendants, who now move to dismiss her Complaint on various grounds. (*Id.* at ¶ 14.)

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."

*Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, a court "assume[s] the[] veracity" of well-pleaded factual allegations and determines "whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive when a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III. DISCUSSION

Plaintiff asserts twenty claims, mostly under 42 U.S.C. § 1983 and the NJCRA, which rise and fall together and permit civil actions against persons who, under the color of state law, violate constitutional rights. *See Gardner v. N.J. State Police*, No. 15-cv-8982, 2017 WL 2955348, at *3 (D.N.J. July 11, 2017) (analyzing Section 1983 and NJCRA claims together because claims are interpreted analogously). Of the twenty claims asserted, only Plaintiff's two excessive force claims against Defendant Perna survive the motions to dismiss, as discussed below.

### A. Hamilton Township and Atlantic County Defendants

Plaintiff brings the same Section 1983, NJCRA, and state law claims against all Hamilton Township and Atlantic County Defendants for entering and searching her property. Separately, Plaintiff brings Section 1983 and NJCRA excessive force claims against Hamilton Township officer Perna for his actions during the search. The Court addresses the separate claims against Perna before turning to the claims against all Hamilton Township and Atlantic County Defendants.

### 1. Defendant Perna

In Count VII and XV, Plaintiff alleges that Perna violated her rights under Section 1983 and the NJCRA by using excessive force when he approached her by the barn, grabbed her roughly, and repeatedly struck her and threw her to the ground in a rough manner. (Compl. at ¶¶ 125, 150.) Perna briefly argues that qualified immunity bars these claims. (Doc. No. 8 at 6.) The Court disagrees.

Qualified immunity analysis has two steps: determining (1) whether a constitutional right would be violated on the facts alleged; and (2) whether the right was "clearly established" at the time of the alleged misconduct. *Newland v. Reehorst*, 328 F. App'x 788, 791 (3d Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001)). If the answer at either step is "no," the analysis may end there. *Pitman v. Ottehberg*, No. 10-cv-2538, 2015 WL 6445872, at *6 (D.N.J. Oct. 23, 2015). The officer seeking to invoke qualified immunity bears the burden of proving its applicability. *See Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010).

Perna has not met his burden. To determine whether a defendant used excessive force in violation of the Fourth Amendment, courts assess the objective reasonableness of a defendant's actions by considering a variety of factors. *See Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (listing factors to consider). Yet Perna discusses none of them here. Instead, he buries one off-the-mark argument for why immunity applies among his arguments on different claims in this case. (Doc. No. 8 at 5–6.) According to Perna, his actions were "objectively and subjectively reasonable" because "[a]s to the apprehension and taking of [Plaintiff] into police custody, and charging her with the disorderly persons offense of obstruction of the administration of the law," Plaintiff "failed to comply with announced commands of law enforcement officials during the execution of the Court Order to search the residence in question." (Doc. No. 8 at 6.) Indeed, Perna asserts, Judge Switzer "found probable cause to file

the specific charge by warrant" against Plaintiff and "to arrest her." (*Id.*; *see also* Doc. No. 14 at 2–3.)[4]

None of this helps Perna, for even if Plaintiff failed to comply with commands to exit the residence and probable cause existed to arrest her for obstruction, that does not mean that striking her and throwing her to the ground repeatedly and roughly is therefore reasonable. In other words, nothing about Perna's argument actually suggests that that *the manner in which* he "apprehended" Plaintiff—grabbing her roughly and repeatedly striking and throwing her to the ground roughly—was objectively reasonable under the circumstances. In fact, Plaintiff's allegations, taken as true, sufficiently state an excessive force claim. *See Ansell v. Ross Twp.*, 419 F. App'x 209, 212 (3d Cir. 2011) (noting that for excessive force claims, a plaintiff must allege that a "seizure" occurred and that it was "unreasonable"). Because Perna does not establish his entitlement to qualified immunity, and nothing in the Complaint permits a contrary conclusion, the Court denies Perna's motion to dismiss Counts VII and XV. Perna may re-assert any immunity arguments as this litigation progresses.

### 2. All Hamilton Township and Atlantic County Defendants

Unlike the separate claim against Perna, Plaintiff's claims against all Hamilton Township and Atlantic County Defendants are not plausibly alleged. Plaintiff asserts that the Hamilton Township and Atlantic County Defendants violated her constitutional rights under Section 1983 and the NJCRA by: (1) illegally entering and searching her property without a search warrant (Counts I and IX); (2) conducting an illegal protective sweep of places beyond the space immediately adjoining where police found Aunt Helen (Counts II and X); and (3) illegally executing a search warrant, assuming Judge Sandson's Order was a search warrant (Counts III

---

[4] If Perna does not offer this argument to defend the excessive force claims against him, he appears to offer no specific argument in defense of these claims and would thus fail to meet his burden to establish his entitlement to immunity for that reason.

and XI). Plaintiff also alleges that the Hamilton Township and Atlantic County Defendants' intruded upon her seclusion under state law by entering her property "without permission" (Count XIX).

As pled, these claims fail because each is based on the same unsupported contentions: that Judge Sandson's Order is neither a search warrant, nor one that meets the Fourth Amendment's requirements. "A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." *United States v. Leon*, 468 U.S. 897, 921 n.21 (1984). A search warrant is valid if: (1) a neutral and disinterested magistrate issues it; (2) those seeking the warrant demonstrate probable cause to the magistrate; and (3) the warrant particularly describes the "things to be seized" and "the place to be searched." *See Dalia v. United States*, 441 U.S. 238, 255 (1979) (citations omitted).

Here, Plaintiff merely concludes that Judge Sandson's Order is not a search warrant without explaining why (Compl. at ¶ 71; Doc. No. 17 at 15), even though it mandated that the police "*will* conduct a *search* of 7234 Belmont Avenue, Mays Landing for Helen Hugo." (Doc. No. 1-1 (emphasis added).) Whether or not it actually is, bare conclusions will not do.

Although not specifically argued, Plaintiff may believe that the document is not a search warrant because it is titled as an "Order" just below the words "Civil Action" in the caption. Indeed, the Complaint does refer to the document as a "Civil Action Order." (Compl. at ¶¶ 34, 71.) If that is Plaintiff's position—which she should clearly articulate—she fails to explain why the Order could not authorize a valid search, regardless of its title or form, so long as it otherwise meets the Fourth Amendment's requirements.[5] Indeed, Plaintiff alleges no facts to plausibly

---

[5] *See United States v. Bailey*, No. 15-cr-6082, 2016 WL 6995067, at *30 (W.D.N.Y. Nov. 29, 2016) (rejecting "contention that suppression is warranted because the court authorization to obtain the data was reflected in the form of a court order as opposed to a warrant," as "the form of the judicial authorization provided is ultimately immaterial" to an application otherwise

suggest that Judge Sandson is not a neutral and disinterested magistrate, lest one who issued the Order without probable cause. To be sure, Plaintiff does allege that if Judge Sandson's Order is a search warrant, it fails the particularity requirement because it does not specify which parts of the property may be searched. (Compl. at ¶¶ 90–92.) But Plaintiff is mistaken, for "[i]t is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925). Judge Sandson's Order, which authorized a search of the "property" and provided a specific address, meets this standard.

At this time, the Court does not find that the Order is a valid search warrant or a document that authorized a valid search, but only that Plaintiff alleges no facts to plausibly suggest the opposite. Without such averments, the Court cannot conclude that Plaintiff has plausibly alleged that the Hamilton Township and Atlantic County Defendants unlawfully entered and searched her property. Because Counts I, II, III, IX, X, XI, and XIX depend on that showing, they are dismissed, without prejudice.[6]

---

"supported by probable cause, issued by a neutral and detached magistrate, and sufficiently particular"); *United States v. Myles*, No. 15-cr-172, 2016 WL 1695076, *8 (E.D.N.C. 2016) (declining to suppress when government obtained cell site data through court orders instead of warrants because "[t]he orders were issued by a neutral, disinterested state superior court judge, . . . they particularly describe the information to be seized[,]" and the applications for the orders established probable cause); *United States v. Martinez*, 982 F. Supp. 2d 421, 431–32 (E.D. Pa. 2013) ("The Government concedes that the 'Emergent Order for Investigative Detention' is not a search warrant, but argues this formal distinction is immaterial because the Order was supported by probable cause. I am certainly prepared to evaluate the Order as a warrant, regardless of how it is titled.").

[6] The Court notes two other defects in Plaintiff's "protective sweep" claim. First, the Court does not see how a "protective sweep" occurred as alleged in Count II, particularly because, as pled, "one or more officers, including Perna," encountered Plaintiff by the barn *before* others found Aunt Helen in the residence. (Compl. at ¶¶ 56, 59). Second, Plaintiff's failure to identify which officers, aside from Perna, engaged in the alleged "protective sweep" by the barn fails to sufficiently allege each party's personal involvement in the alleged violation. If Plaintiff decides to amend, she must specify which Defendants engaged in which allegedly wrongful conduct on

With no plausible constitutional violations alleged, qualified immunity bars these claims. *See Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002) ("If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity."); *see also Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (noting that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint" (citation omitted)). If Plaintiff seeks to amend, she may expand on her positions accordingly. But she may not merely rest on her unsupported contention that on a motion to dismiss, the Court may not determine whether she has adequately alleged that the Order is not a valid search warrant, or a document that authorized a valid search. (Doc. No. 17 at 13, 15.)

Finally, although each Defendant invoking immunity for participating in the actual search focuses on qualified immunity, at least two make a passing reference to absolute immunity—improperly for the first time in a reply brief parenthetical. (Doc. No. 19 at 2.) Absolute immunity may protect "[a]ction taken pursuant to a facially valid court order." *Hamilton v. Leavy*, 322 F.3d 776, 782–83 (3d Cir. 2003). But because the "official seeking absolute immunity bears the burden" of showing that it is justified, and none of the Defendants clearly or properly invoke it here, the Court need not analyze it, particularly considering the other deficiencies that establish qualified immunity as pled. *See Russell v. Richardson*, 905 F.3d 239, 248 (3d Cir. 2018).

---

this and all other counts pled as a group. *See Vaughn v. Geo Grp.*, No. 18-cv-10148, 2018 WL 3056066, at *3 (D.N.J. June 20, 2018) (explaining that "conclusory allegations against [d]efendants as a group," which "fail to allege the personal involvement" of the defendants are insufficient to survive a motion to dismiss; when "a number of different defendants are named in a complaint," plaintiff must specify "which [d]efendants engaged in what wrongful conduct," or else the pleading is an impermissibly vague group pleading (citations omitted)).

### B. Defendant Prosecutor Formica

Plaintiff also fails to allege plausible claims against Defendant Prosecutor Formica. In Counts IV, V, XII, and XIII, Plaintiff sues Formica in his individual and official capacities under Section 1983 and the NJCRA for allegedly "setting in motion" the warrantless entry and search of Plaintiff's property, the illegal protective sweep by the barn, and the illegal execution of a search warrant. In other words, Plaintiff claims that when Formica told Defendant Fernan to go ahead and search Plaintiff's property, Formica "set in motion" the purported constitutional violations alleged in Counts I, II, III and their NJCRA equivalents above. Because Plaintiff's claims against Formica depend on her plausibly alleging such violations by the Hamilton Township and Atlantic County Defendants, and Plaintiff has not, Plaintiff's claims against Formica fail as well. Again, this means that qualified immunity shields Formica.[7] Counts IV, V, XII, and XIII are thus dismissed, without prejudice.

With no federal claims remaining against Formica, the Court declines to exercise supplemental jurisdiction over Plaintiff's claim that he negligently advised Fernan to proceed with the search (Count XVII). *See Cagnina v. Lanigani*, No. 16-cv-7253, 2017 WL 1157851, at *5 (D.N.J. Mar. 28, 2017) (declining to exercise supplemental jurisdiction over state law claims against one defendant when no viable federal claims existed against that defendant even though the plaintiff pled plausible claims against another defendant (citation omitted)).

### C. Defendant County of Atlantic

Next, Plaintiff brings three deficient claims against Defendant County of Atlantic. The first two claims—Counts VI and XIV—are *Monell* claims under Section 1983 and the NJCRA

---

[7] Because of this fundamental deficiency, the Court reserves judgment on the arguments of Formica and Plaintiff on whether Formica's alleged conduct constitutes administrative or investigatory conduct, or acts associated with the judicial phases of litigation. (*E.g.* Doc. No. 17 at 9–11, 16–19.)

claiming that the County of Atlantic had a policy that "resulted in the constitutional violations of Plaintiff's rights set forth in Counts I–III" and their NJCRA equivalents. (Compl. at ¶¶ 122, 148.) Plaintiff alleges that the municipal "policy" that caused the constitutional violations in Counts I through III is Defendant Formica's legal advice to search the property, to which the County of Atlantic is bound. (*Id.* at ¶¶ 117–123.) But because Plaintiff has failed to plausibly allege violations by Formica and in Counts I–III and their NJCRA counterparts, Plaintiff cannot allege plausible *Monnell* claims at this time. *See Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.").

Plaintiff's third claim against Defendant County of Atlantic—Count XVIII—alleges that it is vicariously liable under the New Jersey Tort Claims Act for Defendant Formica's negligent advice to Fernan. But like the underlying negligence claim, the Court declines to exercise supplemental jurisdiction over this claim. *See Cagnina*, 2017 WL 1157851, at *5.

### D. Defendant Fernan

Finally, Plaintiff asserts three deficient "malicious prosecution" claims against Defendant Fernan: one under Section 1983 (Count VIII), one under the NJCRA (Count XVI), and one common law tort claim (Count XX). All three claims stem from what Plaintiff describes as Defendant Fernan's decision to "initiate [a] criminal proceeding" against her by preparing the criminal complaint on which Judge Switzer relied in issuing the warrant for Plaintiff's arrest for not complying with commands to exit the residence. (Compl. at ¶¶ 128, 151, 161.) According to Plaintiff, Fernan prepared the criminal complaint even though he "was aware that Plaintiff had first been observed on the property by officers coming from another building, not from the residence." (Compl. at ¶¶ 62–63, 128–129, 151, 161.)

To state a malicious prosecution claim under Section 1983 and the NJCRA, a plaintiff must plausibly allege that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in her favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *See Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007); *Lucia v. Carroll*, No. 12-cv-3787, 2014 WL 1767527, at *5 (D.N.J. May 2, 2014) (applying same analysis for plaintiff's NJCRA and Section 1983 malicious prosecution claims). These first four elements also comprise the New Jersey common law tort of malicious prosecution. *See Wilson v. N.J. State Police*, No. 04-cv-1523, 2006 WL 2358349, at *9 (D.N.J. Aug. 15, 2006).

Thus, without regard to any other deficiency that may appear, Plaintiff's three malicious prosecution claims all require plausible allegations that, among other things, a criminal proceeding ended in her favor—a proposition she appears to recognize. (Compl. at ¶ 127.) Yet Plaintiff alleges no facts to suggest how any proceeding ended and fails to even mention this element in her opposition brief. (Doc. No. 12 at 10–11.)[8] Plaintiff's claims fail for this reason alone. Accordingly, Counts VIII, XVI, and XX are dismissed, without prejudice. *See McGann v. Collingswood Police Dep't*, No. 10-cv-3458, 2011 WL 2600725, at *4 n.9 (D.N.J. June 28, 2011) (dismissing malicious prosecution claim because plaintiff failed to plausibly allege facts to suggest that "any criminal proceeding ended in his favor," among other deficiencies).

---

[8] The Court notes that Plaintiff's opposition to Fernan's motion to dismiss the malicious prosecution claims references false arrest. (Doc. No. 12 at 10–11.) But the Complaint contains no false arrest claims, and Plaintiff cannot amend her Complaint in a brief opposing a motion to dismiss. *See Alfaro v. Client Servs., Inc.*, No. 11-cv-05463, 2012 WL 1150845, at *1, n.2 (D.N.J. Apr. 5, 2012). The Court is similarly perplexed by the Hamilton Township Defendants' moving brief, which mentions false arrest and false imprisonment when the Complaint contains no such claims. (Doc. No. 8 at 2, 5.) If Plaintiff wishes to assert claims other than what she explicitly pleads, she must clearly and specifically allege them. Clear and specific opposition arguments should follow in any defense thereof.

## IV. CONCLUSION

For the foregoing reasons, all of Plaintiff's claims are dismissed, except the two excessive force claims against Defendant Perna (Counts VII and XV). The Court will grant Plaintiff leave to amend, if she so desires. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). If Plaintiff chooses to do so, she must clearly allege which specific acts are attributable to which specific Defendants. An Order shall issue.

Dated: 3/4/2019 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge