**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| BARBARA MARTIN, | : | |
| | : | |
| Plaintiff, | : | Civil No. 18-11931 (RBK/AMD) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COUNTY OF ATLANTIC, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the separate motions to dismiss of Defendant County of Atlantic (Doc. 30) and Defendants Mario Formica and FNU Snyder (Doc. 35). Also before the Court is Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. 39). For the reasons contained herein, the Court **DENIES** without prejudice Defendants' motions to dismiss and **DENIES** without prejudice Plaintiff's Motion to Amend.

I. **BACKGROUND**[1]

A. **Factual History**[2]

This case stems from authorities' search for Plaintiff Barbara Martin's Aunt, Helen Hugo ("Aunt Helen"), an elderly, incapacitated woman reported missing from her assisted living facility

---

[1] On this motion to dismiss, the Court accepts as true the well-pleaded facts in the Amended Complaint and construes them in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Because the Amended Complaint does not include a first name for Defendant Snyder, this Opinion, like the Complaint, refers to Snyder as "FNU," for "first name unknown," followed by Snyder's last name as pled.

[2] The Court previously set out a detailed factual background in an earlier Opinion (Doc. 20), *Martin v. Cty. Of Atlantic*, Civ. No. 18-11931, 2019 WL 1012011 (D.N.J. March 4, 2019); the relevant portions of that background are set out again here.

in July 2016. After finding Aunt Helen at Plaintiff's Atlantic County farm property, police arrested

Plaintiff. This arrest gives rise to Plaintiff's present case, which she brings against those involved

at various points in the search. Several Defendants were previously dismissed from this case, and

the following remain: (1) Atlantic County; (2) Atlantic County Chief Assistant Prosecutor Mario

Formica; (3) Atlantic County Emergency Response Team Lieutenant FNU Snyder; (4) Hamilton

Township Officer Mark Perna; and (5) Hamilton Township Detective Lawrence Fernan. (Doc. 23,

Amended Complaint ("Compl.") ¶¶2–6.)[3]

The search began on July 21, 2016, when Aunt Helen left her assisted living home in Ocean

County, New Jersey to visit her niece, Plaintiff, who resided on a farm at 7234 Belmont Avenue

in Hamilton Township, New Jersey. (Compl. ¶¶26–27, 33.) On July 22, 2016, Aunt Helen faxed a

letter to her facility stating that she was of sound mind, on vacation, wished not to be harassed,

and that she had her medicine. (*Id.* ¶¶28–30.) Aunt Helen's letter was sent from her living facility

to the Office of the Public Guardian for Elderly Adults of New Jersey. (*Id.* ¶31.) On July 27, 2016,

an attorney with the Office of the Public Guardian for Elderly Adults, Suzanne Dykes, applied for

an "Order" before New Jersey Superior Court Judge Mark K. Sandson. (*Id.* ¶32.) That Order,

attached to the Complaint,[4] states:

1. The Hamilton Township Police will conduct a search of 7234 Belmont Avenue, Mays Landing for Helen Hugo.
2. If Helen Hugo is found at said property, she is to be returned immediately to Spring Oaks Assisted Living.
3. Once Helen Hugo is returned to Spring Oak Assisted Living, the Public Guardian may restrict the visits of Barbara and Kenneth Martin until further Order of the Court.

---

[3] Defendants Perna and Fernan have filed an Answer (Doc. 33) rather than joining either motion to dismiss or filing their own; as such, Plaintiff's claims against Defendants Perna and Fernan are not discussed in detail.

[4] Thus, the Court may consider the Order in deciding these motions to dismiss. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record.").

(Doc. 23-1.) Ms. Dykes prepared the Order that Judge Sandson ultimately signed on her office's letterhead, (Compl. ¶25), though it also contained a proper case caption and a stamp from the Superior Court Deputy Clerk indicating the document's filing date. (Doc. 23-1.) The document's title of "Order" appears just below the words "Civil Action" in the case caption, which also notes that Aunt Helen is an "incapacitated person." (*Id.*) In issuing the Order, Judge Sandson considered "papers" that Plaintiff does not attach to the Complaint, and heard on the record Ms. Dykes' telephonic presentation, the contents of which are not discussed. (Doc. 23-1; Compl. ¶32.)

Judge Sandson's signed Order reached the Hamilton Township Police station in the afternoon on July 27, 2016, where Defendant Detective Lawrence Fernan received it. (Compl. ¶¶37–38.) After determining that the Lacey Township Police Department had entered Aunt Helen as missing, Defendant Fernan contacted Defendant Mario Formica, Chief Assistant Prosecutor with the Atlantic County Prosecutor's Office. (*Id.* at ¶¶39–41.) Defendant Formica confirmed to Fernan that Judge Sandson had signed the Order, and after hearing the Order's contents, Formica told Fernan to "go ahead and search the property." (*Id.* ¶¶42–43.) Fernan, in turn, worked with Defendant FNU Snyder to assemble a search team. (*Id*. ¶¶45–49.)

That evening, officers from the Hamilton Township Police Department and members of the Atlantic County Emergency Response Team arrived at Plaintiff's property, which includes a residence and a barn located 200 feet from the residence. (*Id*. ¶¶50–53.) Upon arriving, they used a loudspeaker to command the occupants to exit the residence. (*Id.* ¶54.) At this time, Plaintiff was feeding animals behind the barn, 200 feet away from the residence. (*Id*. ¶56.) Upon Defendant Snyder's command to enter the property, "one or more officers, including Defendant Mark A. Perna, came towards Plaintiff." (*Id.* ¶¶58–59.) Perna then grabbed Plaintiff roughly, struck her, and threw her to the ground repeatedly and roughly. (*Id.* ¶60.) Plaintiff was then handcuffed and

taken into custody. (*Id.* ¶61.) Eventually, Aunt Helen was found in Plaintiff's residence and removed from the property. (*Id.* at ¶¶63.)

Plaintiff was taken to the Hamilton Township Police Station, where Defendant Fernan charged her with obstruction of the administration of the law for not complying with commands to exit the residence, even though she was by the barn and not in the residence. (*Id.* at ¶64; Doc. 23-3.) Fernan then prepared a criminal complaint for Municipal Court Judge Switzer, who issued a warrant for Plaintiff's arrest on July 27, 2016. (*Id.* ¶¶65–66.) Plaintiff spent four days in jail before posting bail and claims she suffered physical injuries, emotional distress, mental anguish, and anxiety from the incident. (*Id.* ¶¶67–70.) The criminal charge against Plaintiff remains pending.

### B. Procedural History

Plaintiff's original 20-count complaint in this action was dismissed in part by this Court's March 4, 2019 Order (Doc. 21). In the accompanying Opinion (Doc. 20), the Court declined to address the issue of whether Judge Sandson's Order was a valid search warrant, finding that Plaintiff had failed to articulate facts necessitating this finding. Plaintiff then filed an Amended Complaint (Doc 23) on March 13, 2019, limiting her suit to the aforementioned five Defendants but maintaining 20 counts against them. Defendants County of Atlantic, Formica, and Snyder now move to dismiss Plaintiff's Amended Complaint on various grounds (Doc. 30; Doc. 35). Plaintiff has also moved for leave to file a second amended complaint, seeking to amend only Count II and X against Defendants Snyder and Fernan to better express that they are not futile. (Doc. 39 at 3.)

## II.    STANDARD OF REVIEW

### A. Motion to Dismiss

To survive a motion to dismiss, a complaint must contain enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, a court "assume[s] the[] veracity" of well-pleaded factual allegations and determines "whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive when a court can only infer that a claim is merely possible rather than plausible. *Id.*

### B. Motion to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." However, a motion to amend the complaint may be denied where there is undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (citations omitted).

### III. DISCUSSION

### A. Plaintiff's Claims against Defendants Formica and Snyder

Plaintiff brings claims against Defendant Snyder under § 1983 and the New Jersey Civil Rights Act ("NJCRA") for illegal entry and search without a valid search warrant, illegal protective sweep, and illegal execution of a search warrant (Counts I, II, III, IX, X, XI), as well as a common law tort claim for intrusion on seclusion (Count XIX). Plaintiff brings claims against Defendant Formica under § 1983 and the New Jersey Civil Rights Act ("NJCRA") in his individual and official capacities for setting in motion illegal entry and search, illegal protective sweep, and illegal execution of a search warrant (Counts IV, V, XII, XIII), as well as a common law tort of negligence for failing to "make reasonable inquiry of" Judge Sandson's decision to issue the Order (XVII). (Compl. ¶176.)

Defendants Formica and Snyder argue that Plaintiff's claims against them should be dismissed pursuant to the abstention doctrine created by the Supreme Court in *Younger v Harris*, 401 U.S. 37 (1971), since Plaintiff is currently facing a pending criminal charge in state court that likely necessitates a state court determination of the validity of Judge Sandson's Order and the subsequent search. (Doc. 35, Defendants Formica and Snyder's Motion to Dismiss ("Def. Formica Mot.") at 7–9.)

The *Younger* abstention doctrine highlights the "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). *Younger* abstention is appropriate when: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989). Though *Younger* typically applies when a plaintiff is seeking injunctive relief, abstention may still

be warranted in cases where a plaintiff is seeking damages, as "claims for damages which would imply the invalidity of a conviction on pending criminal charges are not cognizable." *Cade v. Newman*, 422 F. Supp. 2d 463, 466 (D.N.J. 2006) (holding that it would be "an improper interference with the pending state criminal court proceeding" to award the plaintiff "damages based upon his claim of constitutional rights violations").

Applying the *Younger* elements here, this Court will abstain. First, there is an ongoing state criminal proceeding, as the disposition of Plaintiff's criminal charge in state court is pending. (Compl. ¶71; Def. Formica Mot. at 1.) Second, the state criminal case implicates an important state interest – whether New Jersey Superior Court Judge Sandson's Order constituted a warrant, and whether the subsequent search was valid. And third, Plaintiff can, and likely will, raise a constitutional challenge to the validity of Judge Sandson's Order and the legality of the search in the state trial.

Although Plaintiff is seeking compensatory and punitive damages rather than injunctive relief, (Compl. at 35), *Younger* abstention is still warranted because the "adjudication of Plaintiff's constitutional claims in this instant civil right action would require this Court to rule upon issues relevant to the disposition of the state criminal charges, thereby impermissibly interfering in the pending state criminal proceeding." *Cade*, 422 F. Supp 2d at 467. Plaintiff's claims against Defendants Formica and Snyder require this court to determine whether Judge Sandson properly signed an Order, whether the Order constituted a valid search warrant, and whether any warrant was properly carried out by the individual Defendants. Plaintiff's pending state criminal charge is for "obstruction of the administration of the law," and came about as a result of the Order being treated as a search warrant and carried out.

The Third Circuit has "consistently held that a § 1983 damages claim for alleged Fourth Amendment violations should be stayed where the constitutional issues are likely to be litigated in a parallel pending state criminal prosecution." *Dalal v. North Jersey Media Grp., Inc.*, Civ. No. 13-1257, 2014 WL 2691698, at *11 (D.N.J. June 13, 2014) (collecting cases); *see also Wallace v. Kato*, 549 U.S. 384, 393–94 (2007) ("If a plaintiff files a . . . claim related to rulings that will likely be made in a pending or anticipated criminal trial[], it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."). Whether Defendants' search of Plaintiff's property was legal is intertwined with her criminal charges—which stem from her alleged interference with the search—and will likely be litigated in the state court.

"Federal courts may stay actions for damages based on abstention principles," but may not engage in "outright dismissal" of the action. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996); *see also Nelson v. Howard*, 810 F. Supp. 161, 164 (E.D. Pa. 1992) (courts "must stay rather than dismiss accompanying claims for damages" where *Younger* applies); *Williams v. Hepting*, 844 F.2d 138, 144–45 (3d Cir. 1988) (directing district courts to "stay and not dismiss accompanying claims for damages and attorney fees when such relief is not available from the ongoing state proceedings"). Accordingly, this Court will stay Plaintiff's claims against Defendants Formica and Snyder, pending resolution of the state criminal case.

### B.  Plaintiff's Claims against Defendant County of Atlantic

Plaintiff brings three counts against Defendant County: Count VI, a "42 U.S.C. Section 1983 claim for having a policy which when implemented caused (1) illegal entry and search without a valid search warrant; (2) illegal protective sweep, and (3) illegal execution of a search warrant"; Count XIV, which sets out the same claim as Count VI but under the New Jersey Civil

Rights Act ("NJCRA") rather than § 1983;[5] and Count XVIII, "vicarious liability of Defendant, County of Atlantic, for Defendant, Mario Formica's Negligence." Defendant County has moved to dismiss all counts against it.

Counts VI and XIV attempt to state *Monell* claims against Defendant County. Under *Monell v. New York City Dep't. of Social Serv.*, 436 U.S. 658, 694 (1978), a local government entity may be responsible for constitutional violations of its employees under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury." Thus, to state a § 1983 claim against a municipality, the complaint "must identify a custom or policy, and specify what exactly that custom or policy was," *McTernan v. City of York, Pa*, 564 F.3d 636, 658 (3d Cir. 2009), and specify facts showing a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir.2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

The "requirement of an underlying constitutional violation is implicit in the Third Circuit's *Monell* framework." *Lansberry v. Altoona Area Sch. Dist.*, 356 F.Supp.3d 486, 497 (W.D. Pa. 2018). In order to hold a defendant liable on a *Monell* claim, a plaintiff must establish that the policy at issue "caused a violation of [her] constitutional rights." *Id.* (citing *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). Here, the underlying constitutional violations Plaintiff alleges are all tied to the validity of Judge Sandson's Order permitting her property to be searched, and Defendant Formica's reliance on that Order. As noted above, the validity of the

---

[5] Although Plaintiff brings this *Monell* claim under the NJCRA rather than § 1983, her *Monell* claims will be analyzed together because the NJCRA is "generally interpreted nearly identically to § 1983 and claims under the NJCRA are generally contemporaneous with and subject to the same defenses and immunities as those brought under § 1983." *O'Neal v. Middletown Twp.*, Civ. No. 18-5269, 2019 WL 77066, at *8 (D.N.J. Jan. 2, 2019).

Order is intertwined with the pending state criminal charge against Plaintiff. Accordingly, this Court will also abstain under *Younger* from deciding the *Monell* claims.

Although Defendant County did not make a *Younger* argument in its motion to dismiss, the abstention analysis above nonetheless applies to Defendant County's motion as well. *See Tobia v. Lakewood Bd. of Educ.*, Civ. No. 16-4850, 2017 WL 1206010, at *6 (D.N.J. Mar. 31, 2017) (denying a partial motion to dismiss under *Younger* principles despite one defendant's failure to make a *Younger* argument in its motion, and applying the "ruling invoking *Younger* abstention to the matter as a whole"); *see also O'Neill v. City of Philadelphia*, 32 F.3d 785 (3d Cir. 1994) (holding that courts may raise *Younger* sua sponte); *Victor Urban Renewal Grp. LLC v. City of Camden*, Civ. No. 18-10841, 2019 WL 1434718, at *4 (D.N.J. Mar. 31, 2019) ("Abstention doctrines may be raised by the court sua sponte").

Because Plaintiff's *Monell* claims are premised upon the invalidity of the search warrant, the Court will stay these claims. A similar analysis applies to Plaintiff's vicarious liability claim (Count XVIII) against Defendant County. As this claim is also premised upon Defendant Formica's negligence in failing to investigate the validity of the warrant, the Court will also stay this claim. Defendant County's motion to dismiss is denied without prejudice.

### C. Plaintiff's Motion to Amend

Plaintiff brings a motion to amend (Doc. 39) two counts of her Complaint against Defendants Fernan and Snyder: she seeks to amend her claims for illegal protective sweep under § 1983 and the NJCRA to include language from the Supreme Court's opinion in *Bailey v. United States*, 568 U.S. 186 (2013). Defendants Formica and Snyder oppose this motion, arguing that Plaintiff unduly delayed her attempted amendments, that she is improperly adding legal arguments,

rather than facts, to her Complaint, and that the proposed amendments would be futile regardless because this case differs factually from *Bailey*. (Doc. 42 at 6.)

Because "there are presently pending state court proceedings implicating important state interests that arise out of the same circumstances from which the claims asserted in Plaintiff's proposed amended complaint stem," Plaintiff's motion to amend will be denied without prejudice. *Pappas v. Twp. of Galloway*, 565 F. Supp. 2d 581, 593 (D.N.J. 2008) (denying a motion to amend, stating: "Plaintiff's amendment would be futile in light of [the Court's] decision to abstain . . . under *Younger*").

## IV.  CONCLUSION

The Court will stay the entirety of Plaintiff's federal case "pending the final outcome of the criminal proceedings," as this "will allow the [state] criminal proceeding to proceed without interference from its federal sibling, while enforcing the duty of federal courts to assume jurisdiction where jurisdiction properly exists." *Dalal*, 2014 WL 2691698 at 12 (citing *Deakins v. Monaghan,* 484 U.S. 193, 202–203 (1988)).[6]

For the reasons stated herein, Defendant County's Motion to Dismiss (Doc. 30) and Defendant Formica and Snyder's Motion to Dismiss (Doc. 35) are denied without prejudice; Plaintiff's Motion for Leave to File Second Amended Complaint is denied without prejudice as well. This case will be stayed and administratively terminated pending resolution of Plaintiff's state proceeding, and may be reopened at the conclusion of Plaintiff's criminal case. *See Gonzalez v. Waterfront Comm'n of the New York Harbor*, Civ. No. 13-978, 2013 WL 12091134, at *2

---

[6] Thus, Plaintiff's claims against Defendants Fernan and Perna—though they have not moved to dismiss along with the other Defendants—are also stayed pending the resolution of Plaintiff's state criminal case, as the claims against these Defendants rely on the same set of facts. *See Dalal*, 2014 WL 2691698 at *12 (rejecting "the option of a partial stay" against only the moving Defendants, and instead staying the entire case, stating: "given this interconnectedness, it would entail a waste of judicial resources, and potentially result in unnecessary friction between this Court and the New Jersey Courts, if this Court were to allow the claims against [some] Defendants to proceed separately.")

(D.N.J. Mar. 13, 2013), aff'd sub nom. *Gonzalez v. Waterfront Comm'n of New York Harbor*, 755 F.3d 176 (3d Cir. 2014) (staying and administratively terminating the plaintiff's case "pending resolution of all state proceedings"). An accompanying Order shall issue.

Dated: 11/26/2019                                         /s/ Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge